The next case today is United States v. Ismael Cruz-Ramos, Appeal 18-1569. Ms. Liebesman, whenever you're ready. Thank you, Your Honor. Chief Judge Howard, may I reserve three minutes for rebuttal? Yes. Thank you, Your Honor. May it please the Court, my name is Ruth Liebesman, and I represent Ismael Cruz-Ramos in this appeal. As the Court is aware, this is an appeal of a retrial after a different panel of this Court had suppressed the search of my client's home in Puerto Rico because the warrantless entry was without probable cause. After the Court remanded to the District Court in Puerto Rico, the District Court found that Mr. Cruz-Ramos' post-arrest statement was the fruit of the poison tree and that statement was also suppressed. Mr. Cruz went to retrial, at which time the government introduced not the Mr. Cruz-Ramos, prior to this Court's reversal of his conviction, pled guilty to harboring a fugitive, that fugitive being a man, Edwin Bernard Aspino, who was in Mr. Cruz's home at the time of the warrantless entry. Mr. Cruz pled guilty to harboring a fugitive, and the search of his home was reversed. No attempt was made to vacate that plea, and Mr. Ramos' plea agreement was admitted to evidence with his post-arrest statements redacted. This was the strongest evidence against Mr. Cruz in terms of his membership in this conspiracy. It is our position that Mr. Aspino's presence in his house was evidence found in the home that should have been suppressed as well. The fact that he was there would not have been known had there not been a warrantless entry, and although Mr. Aspino's arrest is not invalidated, in terms of how this is from Mr. Cruz's point of view, Mr. Astacio is physical evidence that was introduced against him at trial. His plea agreement should have been voided, his plea should have been vacated, but counsel, who did a spectacular job at trial, did not take the time to move to vacate that plea because in the first trial, the all evidence related to this helicopter shooting had been suppressed, and that evidence was not so prejudicial. In terms of this trial, it never got vacated. No, it did not, Your Honor, absolutely true, but the plea agreement itself was related to something that should have been suppressed. Now, I don't think it's right for us to let this thing go. We don't want to come back on an ineffective assistance of counsel claim because he didn't move to vacate prior to trial because the fact is that this was the worst evidence against Mr. Cruz. Everything else was cooperator testimony. There was no physical evidence against him, but the evidence that he had harbored this fugitive was not only introduced, but it was driven home by the government. Unlike the first trial, it was discussed during the opening. It was hammered home during testimony of the cooperators, and then during the government summation, they not only brought that up, but they argued that Mr. Cruz had been trying to help Mr. Estacio flee, whereas in his post-arrest statement, which was not only suppressed, but redacted from his plea agreement, he said, I was trying to get him to surrender, and I was trying to get him a lawyer. So not only was this evidence that should have been used, it was misused. Why do you say it should have been excluded? Because as I understand it, the other proceeding, he voluntarily pled and admitted that he was harboring Bernard. Yes, Your Honor, that's absolutely true. So once you decide, well, I've got these, I could have it suppressed or not, but I'm not going to. I'm going to confess to it and admit, isn't that confession itself something that can be used? It certainly can be used to put him in prison, Your Honor, but it is something that should rightly have put him in prison for harboring. But he's doing a life sentence on the basis of this evidence, which was the most prejudicial against him. And it was unduly prejudicial because it was misused. It was unduly prejudicial because it was really the only evidence, his own statements. Your Honors, I wanted to address the issue of the failure to give a Rosemond instruction because the Rosemond instruction requires that a person who is convicted of aiding and abetting in a murder by firearm or by weapon must know in advance that a weapon is going to be used. That instruction was not given. In this particular case, there is contradictory evidence as to what he knew was going to happen. The evidence he had advanced knowledge that there was going to be a murder was contradictory and, in our opinion, insufficient. Figaro-Cancel claimed that Cruz was at the meeting planning the murder, but El Domi, who was really the star witness, said Cruz was not at the meeting. He said he went to Cruz's residence to get a vehicle and a license plate, but he did not say that Cruz was told why they needed it. So Domi, in fact, testified that the extraction team, which the other witness said Mr. Cruz was part of, Domi said the extraction team was himself, Peter Pye, Joselo, Gardy, Cindy, and El Chinko. And, in fact, one of the other contradictory bits of testimony was that Mr. Cruz, who at that person, excuse me, Figaro-Cancel said he was part of the extraction team, but this planned murder that was planned in advance, apparently Mr. Cruz did not get his car before and was at a gas station when the murder occurred. Counsel, you seem to be saying that the court instructed the jury that they had to determine whether Cruz consciously shared the other person's knowledge of the underlying criminal act, and I believe our case law has suggested that that's the substantial equivalence of a Rosemond jury instruction. Well, Your Honor, excuse me, hang on. I'm sorry. If that's true, then the second part of what you're arguing sounds like an insufficiency as opposed to a jury instruction error. Your Honor is correct, absolutely, Judge. But what the Supreme Court decided in Rosemond is that the court must instruct the jury that the defendant actively participated in the underlying violent crime with advanced knowledge that a confederate would use or carry a gun during the crime's commission. And this is in addition to the standard requirement that the government prove a person is liable under 18 U.S.C. Section 2 for aiding and abetting if he takes an affirmative act in furtherance with the intent of facilitating the offense's commission. So that standard instruction under Rosemond is not sufficient, that there has to be an instruction that you must know in advance that a gun is going to be carried by a confederate. There is not real evidence of that. And yes, the evidence of that particular portion of the instruction that should have been given, we don't believe that a jury would have found that the government had advanced knowledge of the intended use of a gun. We're reviewing this, there was no objection below to this instruction, is that correct? That is quite true, Your Honor. So we're reviewing on plain error. And so that takes me back to Judge Thompson's question. Even if you think consciously sharing is not the same as Rosemond requires, because it doesn't expressly say that you need to share it beforehand, isn't the difference so small that you really have a problem on plain error? No, Your Honor, because the error is plain, because the need to give this instruction adds an entire other element that has to be proven beyond a reasonable doubt. And that was not done here. So the error is plain, and it affected the outcome. The fact that the Supreme Court ruled that a certain instruction had to be given, and it was not, that is a plain error. Did it affect the defendant's substantial rights? Yes, Your Honor, I believe it did, because if the jury had had to debate that issue, and if counsel had requested that instruction, counsel would probably have focused on the fact that the witnesses were all over the map on what he knew in advance of the murder. Thank you. You've reserved some time, and we'll hear from the government. Yes, Judge, I have. Thank you. Mr. Bezosa. Good morning, Your Honor. May I please report? Francisco Bezosa Martinez on behalf of the government. Your Honor, Leon was a vast, far-reaching RICO conspiracy, RICO enterprise, that operated numerous housing projects across various drug points, across various housing projects in San Juan. From its inception, Leon was an alliance, and one of its stated purposes was to evade, capture, or law enforcement interventions. One of those matters was, as explained in the government's, as noted in the government's indictment, was that members of the enterprise provided shelter and protection to known fugitive members in order to aid against their apprehension by law enforcement. The defendant's plea agreement to harboring a fugitive not only showed the existence, scope, and nature of Leon, but showed that Cruz was, in fact, a member. The plea agreement, as opposed to his statements immediately after the illegal search, was sufficiently attenuated to take it out of the realm of saying that it was having given him the opportunity to discuss the matter with counsel. This temporal proximity, furthermore, shows that the exclusionary rule had already served its purpose. His initial, as I stated, his initial confession was off-limits, was already taken off the table. Further extending that exclusionary rule to his plea agreement would serve no legitimate purpose. As this panel discussed with sister counsel, notably, he has not moved to invalidate that plea agreement or that conviction in that related case. Use of this plea agreement was also not unduly prejudicial. As I stated, it had a clear probative value. It showed that he was, that he admitted to being a member, being a member of this organization, as it had showed that he admitted to have committed what would be an overt act in furtherance of the Rico conspiracy of Leon. Furthermore, the district court gave limiting instructions to the jury to ensure that they did not use this plea agreement in an improper fashion. It told the jury, you may use this to determine whether the government has proven its case. However, you cannot use this just to conclude that he is guilty of the charges of this case because he pled guilty in that other case. Now the sister counsel makes an issue about the fact that, but for the illegal search, he would not have confessed. That may be true, but the law doesn't require a complete break. It just needs to be sufficiently attenuated. And I would point this court to the Supreme Court's decision in United States v. Bayer, 331 U.S. 532, where it said that a later confession may always be looked upon as a fruit of the first confession. But this court has never gone so far as to call that making a confession under circumstances which exclude its use perpetually disables the confessor from making a usable one after those conditions have been removed. The government, it's the government position that that is what happens here, what happened here. The unlawful nature of the illegal search and the taint it brought had been removed by the time that he pled guilty seven months later. Now, with regard to the Rosemond instruction... I'm sorry, before you move on, do you know if there were any suppression motions filed in that harboring case? I don't believe so, Your Honor, no. And that was a proceeding in the Commonwealth Court? No, it was in federal court. Yes, yes, Your Honor. It was a federal indictment, yes. As to the Rosemond jury instruction, the government's position as this matter has been weighed not only was it not raised below, it was given a cursory treatment in the appellant's brief. That being said, under plain error review, this court has already stated in Manso Cepeda that this cannot be a clear and obvious error given this court's consciously shared formulation for aiding and abetting. This consciously shared formulation predates Rosemond, and therefore it is not a clear and obvious error. Furthermore, under plain error, appellant has the burden of prudent persuasion under all four factors of the plain error standard. Appellant does not address the third and fourth wrongs in his brief, therefore, that those have been weighed, and he cannot overcome a plain error based on that alone. Now, as for relatedly in terms of the aiding and abetting, I would mention also briefly, he mentions that Puerto Rico aiding and abetting is somehow not the same as federal aiding and abetting. I would, the government's position is that no, liability under Puerto Rico law, under aiding and abetting theory, does exist, and it is substantially the same as federal aiding and abetting. And for that, my apologies for bringing this up because I just found it this morning, the Supreme Court of Puerto Rico has a case called PIPO v. Martez-Olan from 1975, in which it said that the penal code not only considers as principles those directly participate, or sorry, directly commit the punishable offense, but also those as well who aid in the commission thereof. That was a direct quote from a Supreme Court, Puerto Rico Supreme Court case from 1927. So there should be no doubt that in this court's mind that aiding and abetting under Puerto Rico law is substantially the same as in federal law. Is there an existing English translation of that case? Yes, Your Honor. So in that case, would you file a 28-J letter with the citation to the case, no argument? Of course, Your Honor, yes. Give you a copy of the case, Chief Judge. That would be helpful if you could provide a copy of the case as well. Yes, no problem. Now, with regards to giving the multiple conspiracies instruction, the government's position is quite clear. This was a unified effort, and its evidence was that this was one overarching conspiracy. They have the goals, they have to abide by the same rules, they shared a hand gesture, they all participated in not only the drug trafficking, but the criminal acts, and they pulled resources and manpower. The government, for example, drug, as to the drugs, the evidence of cooperating witnesses testified to the effect that the heroin sold at Las Villalobas, where the appellant was the drug-borne owner for heroin, that was cut and decked at the heroin tables at Las Dalias project housing. Similarly, one of the cooperating witnesses testified that he was a resident of Las Villalobas, but also had shifts for selling both at Las Villalobas and Las Gladiolas. They also shared firearms and all this, so it showed that these all were interrelated, and therefore, there was no evidence that these were separate, distinct conspiracies, but rather one overarching conspiracy. If your honor have no more questions. I don't see any. Let's just wait a second. All right, thank you. Thank you, your honor. Hi, thank you, your honors. Your honor, briefly, with regard to the plain error standard, and during Rosemond, the Supreme Court ruling stated, the government argues that any error was harmless because the jury must have found that Rosemond himself fired the gun. The court there said that those claims were not raised below, and they see no reason to decide in the first instance whether or not this is a harmless error. So, we do not know whether the Supreme Court would consider a Rosemond, the failure to give a Rosemond instruction, a harmless error. That remains undecided. Your honors, with regard, and I apologize for speaking quickly, but I have limited time here. With regard to the confession, the plea agreement, there is a but-for analysis, because there should not have been a charge to begin with, but for the illegal entry, this man would not have been found in Mr. Cruz's home. Mr. Cruz wouldn't have made a plea agreement. He would not have pled guilty. There was no probable cause, as this court determined below, so there's no inevitable discovery. They could not have gone and gotten a warrant until they got more evidence. That's certainly not an argument that there's inevitable discovery. They would not have found this man, but for the illegal warrantless search based on insufficient probable cause, there was, had that not happened. What is the best case you can point to that would support this but-for proposition? Your honor, I have to say that I have yet found, yet to find, a situation in which a person pled guilty to an offense on evidence that was subsequently suppressed. I have absolutely, and I have researched this, your honor. I put effort into it. I have found no case on point in either direction under these factual circumstances. Suppose after the arrest, six months later, he told a friend that he'd been harboring Bernard. Wouldn't that be admissible? Absolutely. Absolutely. It's not being done. That is actually absolutely admissible. Suppose the reason he told the friend was the friend says, I hear you got arrested. What'd they arrest you for? Harboring Bernard. I wouldn't have had that conversation but for the arrest. Are you still saying it would be squashed? A statement to another person is very different to a friend or a colleague. It's very different from a court statement. The court statement is presumably much more reliable, thought through in advance, done with the assistance of counsel. Why would we allow in one and not the other? Because one is based upon the existence of an illegal search and the other is simply a statement based upon a question by somebody not acting in an official capacity. If somebody said to my client, what were you arrested for? He said, harboring Bernard. That's not even really a confession. That's the charge. This was a confession based on a charge that shouldn't exist. Now, there is an agreement according to the government to shelter and protect one another. With regard to the argument of attenuation, attenuation relates to the discovery of a confession that relates back to the Fourth Amendment violation. The government isn't arguing that Cruz's allocation was too attenuated to be the fruit of the poison tree. The attenuation doctrine is about the causal relationship between the unconstitutional act and the discovery of the evidence. The evidence discovered was Bernard. Any follow-up questions from the court? Ms. Liebesman, thank you very much. Thank you, your honors. Have a good day. That concludes argument in this case. Attorney Liebesman and Attorney Bezosa, you should disconnect from the hearing at this time and we'll pause the recording.